519 So.2d 93 (1988)
LOUISIANA STATE BAR ASSOCIATION
v.
Rallie C. EDWINS.
Nos. 86-B-0924, 87-B-0208.
Supreme Court of Louisiana.
January 18, 1988.
Rehearing Denied February 11, 1988.
*94 Thomas O. Collins, Jr., G. Fred Ours, New Orleans, Gerard F. Thomas, Jr., Natchitoches, Roland J. Achee, Shreveport, Robert J. Boudreau, Lake Charles, Robert M. Contois, New Orleans, Frank J. Gremillion, Baton Rouge, Carrick R. Inabnett, Monroe, Harvey Lewis, New Orleans, Alfred S. Landry, New Iberia, Philippi P. St. Pe, Metairie, for applicant.
Glyn J. Godwin, New Orleans, Rallie C. Edwins, Baton Rouge, for respondent.
MARCUS, Justice.
The Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted two proceedings against Rallie C. Edwins, a member of said association. Prior to the commencement of each proceeding, the committee had conducted investigations of respondent's alleged misconduct in accordance with article 15, section 3 of the articles of incorporation of the association. Notice of the first proceeding, No. 86-B-0924, which involved five specifications of misconduct, was sent to respondent by certified and regular mail dated June 4, 1985. Notice of the second proceeding, No. 87-B-0208, which contained three specifications of misconduct, was sent by certified and regular mail dated June 30, 1986.
The committee held a formal investigative hearing on the five specifications set forth in No. 86-B-0924 on July 12, August 26, and October 2, 1985, as provided in article 15, section 3(b) of the articles of incorporation. The respondent appeared on July 12 and August 26, 1985 without counsel and represented himself. On October 2, 1985, respondent was present, testified on his own behalf and was represented by Glyn J. Godwin. Based upon the evidence adduced at this hearing, the committee by a majority vote was of the opinion that respondent had violated the laws of the state relating to the professional conduct of lawyers and to the moral fitness for the practice of law. Specifically, the committee found that the evidence supported the charges set forth in Specifications 1, 2, 3 and 5 except that in Specification 2 the words "in that said accounting ... received *95 by your client" should be stricken and that in Specification 3, the figure $7,851.30 should be amended to $7,500.00. On May 13, 1986, the committee instituted in this court a suit for disciplinary action against respondent under the provisions of article 15, section 4(c) of the articles of incorporation. Respondent filed an answer to the petition. The court, by order, then appointed Mr. Horace C. Lane as commissioner to take evidence and file a report with this court setting forth his findings of fact and conclusions of law. Louisiana State Bar Association Articles of Incorporation, article 15, section 6(b) and (d).
The committee conducted a formal investigative hearing on the three specifications of misconduct set forth in No. 87-B-0208 on August 26 and September 11, 1986. After reviewing the evidence presented at this hearing, the committee by majority vote was of the opinion that respondent had violated the laws of this state relating to the professional conduct of lawyers and to the moral fitness for the practice of law. Specifically, the committee found that the evidence supported the charges set forth in Specifications 1 and 3. The committee filed a petition for disciplinary action with this court on January 23, 1987. Respondent filed an answer to the petition. The court appointed Mr. Lane as commissioner and consolidated this matter with No. 86-B-0924.[1]
The commissioner's hearing in 86-B-0924 was held on December 16, 1986. Respondent and his attorney were present. The committee introduced in evidence the entire record of the earlier investigative hearing whereupon the committee rested its case subject to any cross-examination. Respondent presented the complainant in this matter, Mr. Ernest Jefferson. The commissioner filed with this court his written report for 86-B-0924 on February 13, 1987, wherein he stated his findings of fact and conclusions of law and recommended that respondent be suspended from the practice of law for a period of one year. The committee generally concurred with the commissioner's findings but opposed his finding that there was no misappropriation of funds by respondent. The committee also opposed the commissioner's recommendation of discipline, reserving its right to argue appropriate discipline in its brief to this court.
The commissioner's hearing in 87-B-0208 was held on May 28, 1987. Respondent and his attorney were present. The committee introduced in evidence the entire record of the earlier investigative hearing whereupon the committee rested its case subject to any cross-examination. Respondent, after his attorney read a statement by respondent into the record, also rested his case. The commissioner filed with this court his written report for 87-B-0208 on August 14, 1987, wherein he stated his findings of fact and conclusions of law and recommended that respondent be suspended from the practice of law for a period of three years. The committee concurred with the commissioner's findings but opposed the commissioner's recommendation of discipline, reserving its right to argue appropriate discipline in its brief to this court.
In its brief to this court, the committee recommended that we consider disbarring respondent from the practice of law. After oral argument before this court, the matter was submitted for our determination on the record before the commissioner.
The bar association has the burden of establishing by clear and convincing evidence that respondent was guilty of the alleged specifications of misconduct. Louisiana State Bar Association v. Dowd, 445 So.2d 723 (La.1984).
The following allegations of misconduct have been made in No. 86-B-0924.
Specification No. 1 alleged:
In connection with above numbered Committee file, it has been alleged:
That in you[r] capacity as Attorney at Law you were retained by Mr. Ernest *96 Jefferson to represent him in a workmen's compensation case, to wit Ernest Jefferson vs. Morton Salt Company, No. 47172 of the dockt [sic] of the 16th Judicial District Court, Iberia Parish, Louisiana. That said workmen's compensation case was ultimately resolved with a $65,500.00 lump sum payment in favor of your client.
That you did have in your employ during the time of the settlement of this case and the subsequent disbursal of funds a person named Rob Robertson who was at all times your employee in this matter. That the lump sum settlement in the amount of $65,000 was placed into an account with the Bank of Iberia entitled John Day, by Rob Robertson on or about November 8, 1983. That said deposit resulted in the commingling of your client's funds with other funds not belonging to any of your clients in violation of Disciplinary Rule 9-102(A)[[2]] and 1-102(A)[[3]] of the Code of Professional Responsibility of the Louisiana State Bar Association.
Evidence submitted at the hearings established that Ernest Jefferson hired respondent through respondent's employee, Richard Robertson, a paralegal and non-lawyer, to appeal and complete a worker's compensation case. After an appeal to the court of appeal and proceedings before this court, the matter was remanded to the trial court. This compensation case was settled on November 7, 1983 for $65,500. On the next day (November 8), the settlement draft was deposited by Robertson into his bank account which was titled the John Day Account. This bank account was not an attorney's trust account nor did it belong to Edwins. The evidence submitted showed that Robertson had used this account for both personal and business matters and that respondent knew and consented to the deposit of the draft settlement into this account. The evidence also showed that Ernest Jefferson did not receive any of his settlement funds until November 11, 1983. Respondent offered no evidence to refute any of the above facts. He tried to explain these facts by claiming that the settlement draft was deposited into the John Day Account because Ernest Jefferson had requested his money promptly and that the use of this account was the only way to accommodate this request.
The commissioner concluded that the committee proved this specification in its entirety.[4] We concur with the commissioner, concluding that respondent commingled the funds of his client, Ernest Jefferson, in violation of DR 9-102(A). It was wrong for respondent to turn over the settlement draft to a third party to distribute and to allow that third party to deposit the client's funds into a personal account. We find no substance to respondent's explanation for allowing his client's funds to be deposited in Robertson's account. Respondent also violated DR 1-102(A)(1)(2)(5) and (6). However, respondent did not violate DR 1-102(A)(3) and (4).
Specification No. 2 alleged:

*97 In connection with the above numbered Committee file, and in connection with your representation of Ernest Jefferson as detailed above, it has been alleged: That in the disbursal of the lump sum settlement in the amount of $65,500.00 in the above detailed workmen's compensation case, you did render, or caused to be rendered, or allowed to be rendered, an inaccurate and incomplete accounting of the disbursal of said funds and that said failure to render a proper account is in violation of Disciplinary Rule 9-102(B)(3) and (4)[[5]] and DR 1-102(A)[[6]] of the Code or Professional Responsibility of the Louisiana State Bar Association.
The evidence submitted at the hearings showed that the following accounting was rendered to Ernest Jefferson by Robertson on November 8, 1983:

Total of settlement $65,000.00
R.C. Edwins & Associates 7,500.00
Third Circuit Court of Appeal Prep 1,000.00
Supreme Court Prep 1,000.00
Administrative costs, telephone calls,
 letters, etc. 500.00
Miscellaneous and travel expenses 1,500.00
Subtotal 11,500.00
Borrowed money from Rob 3,065.57

Respondent received a check for $10,000 on November 7, 1983. It would appear from the above accounting that this $10,000 was composed of the $7,500 deduction plus the two $1,000 appellate court deductions and the $500 administrative deduction. According to the evidence submitted at the hearing, Robertson received the $1,500 deduction plus his advances to the client totaling $3,065.57.
Ernest Jefferson received a check from Robertson for $22,934.43. Later at Jefferson's request, Robertson delivered a $20,000 check to E.F. Hutton and Company for an investment. Jefferson and Robertson had also discussed going into business together and it was agreed that Jefferson would put up $7,500 to help repair a fishing boat owned by Robertson. Thus, Robertson kept $7,500 of the settlement. According to Robertson's testimony, he executed a promissory note shortly before the August 26, 1985 hearing for the balance owed on the $7,500. As of the date of that hearing, the balance owed on that note was $1,517.47.
It should be noted that the actual settlement was for $65,500 and thus the above accounting failed to account for $500.
During the testimony at the hearings, there were numerous attempts to account for the items that made up the $10,000 paid to respondent plus the $1,500 paid to Robertson. These explanations were inconsistent. No documentation of any expenses was submitted. There were no receipts and no cancelled checks showing that any of these expenses had been paid.
The commissioner found that the committee had proved Specification 2 in its entirety.[7] We concur with the commissioner, concluding that the respondent rendered an inaccurate and incomplete accounting of the disbursal of the settlement funds in violation of DR 9-102(B)(3) and (4). Respondent also violated DR 1-102(A)(1), (2), (5) and (6). However, respondent did not violate DR 1-102(A)(3) and (4).
Specification 3 alleged:
In connection with the above numbered Committee file, and in connection with your above detailed representation of Ernest Jefferson in the above detailed lump settlement of the above detailed workmen's compensation case, it has been alleged:
That under the Louisiana Revised Statutes 23:1141 the maximum permissable [sic] fee that you would be premitted [sic] to charge would be no more than $7,500.00. That you did, in fact, charge *98 attorney's fees in the sum of $9,500.00 in violation of Louisiana Revised Statute 23:1141,[[8]] Disciplinary Rule 1-102(A),[[9]] and Disciplinary Rule 2-106[[10]] of the Code of Professional Responsibility of the Louisiana State Bar Association.
Under La.R.S. 23:1141, the maximum statutorily permissible fee that respondent should have charged Jefferson should have been $7,500.[11] As stated above, respondent received a check for $10,000 while Robertson received $1,500. Respondent and Robertson also failed to account for $500 of the $65,500. Thus, respondent and his employee actually received $12,000, not including the $7,500 loan from Jefferson to Robertson or the $3,065 loan repayment.
Though there may be certain expenses which are properly chargeable to a client in a worker's compensation case, many expenses that were described during the testimony from the hearings, such as overhead expenses, expenses of operating an office or paying the firm's employees, clearly are not properly chargeable to the client. Also, since there was no documentation submitted at the hearings of any of the expenses that may have been properly chargeable to the client, the entire amount of the funds retained by either respondent or Robertson that exceed the $7,500 maximum statutory fee should be considered an illegal fee. Thus, $4,500 of the $12,000 charged should be considered as excessive.
The commissioner found that Specification 3 had been proved.[12] We concur with the commissioner, finding that respondent charged an illegal fee in violation of La.R.S. 23:1141 and Disciplinary Rule 2-106. Respondent also violated DR 1-102(A)(1)(2)(5) and (6). However, respondent did not violate DR 1-102(A)(3) and (4).
Specification 4 alleged:
In connection with the above numbered Committee file, and in connection with your above detailed representation of Ernest Jefferson, it has been alleged:
That in the disbursal of funds to your client, you did, or caused to be done, or permit to be done, the conversion of a sum of money in excess of $7,000.00 to either your own personal use, or the personal use of your employee, Rob Robertson, or the use of another person, in violation of Disciplinary Rules 1-102(A)[[13]] and DR 7-101(A)(3)[[14]] and DR 9-102(B).[[15]]
*99 Originally, the committee was of the opinion that respondent was not guilty of violating Specification 4. The commissioner agreed with the committee finding and concluded that there was little or no evidence to support the allegations of Specification 4. The committee now disagrees with this conclusion. The committee argues that the charging of fees that exceed the maximum amount allowed by La.R.S. 23:1141 is the charging of an illegal fee and that the keeping by respondent of this illegal fee is the same as conversion. We do not agree with the committee's argument. The charging of a fee in excess of the statutory amount in and of itself is not enough to make the attorney guilty of conversion. There was no showing during the hearings that any of the excessive amount charged was converted to respondent's own personal use or the personal use of his employee, Robertson. Therefore, we concur with the commissioner that there was insufficient evidence to show that respondent converted the funds of his client in violation of DR 7-101(A)(3) and DR 9-102(B). We also find that respondent did not violate DR 1-102(A) in this matter.
Specification 5 alleged:
In connection with the above numbered Committee Files it is alleged as follows:
That either prior to or commencing on or about June of 1983 and continuing through and including and possibly past August of 1983, you have aided and assisted a non-lawyer to wit, one Rob Robertson, to engage in the unauthorized practice of law, have engaged in the dividing of legal fees with a non-lawyer to wit, Rob Robertson, and have done so through conduct involving dishonesty, fraud, deceit, or misrepresentation to wit, claiming that Mr. Rob Robertson was a paralegal when, in fact, he was engaged in the unauthorized practice of law. All in violation of Disciplinary Rules DR 1-102(A)(1) (2) (4) (5) (6),[[16]] DR 3-101(A),[[17]] and DR 3-102(A)[[18]] of the Code of Professional Responsibility of the Louisiana State Bar Association.
Evidence submitted at the hearings established that Jefferson contacted Robertson, a non-lawyer, about his case and that Robertson referred Jefferson to respondent. Jefferson testified that Robertson never told him he was a practicing lawyer. Robertson testified that he did have direct contact with the claims agent of the worker's compensation carrier. However, both Robertson and respondent testified that respondent closely supervised Robertson's contact with the claims agent and that the contact with the claims agent merely consisted of Robertson's relaying of messages given by respondent to the claims agent. While Robertson testified that on some cases he shared in respondent's profits, he did not do so in Jefferson's case. The committee introduced in evidence an Iberia Parish phone book containing a "yellow page" advertisement that did nothing but advertise Robertson as a paralegal and show that he was connected with respondent. Robertson testified that respondent was never told of this advertisement.
The commissioner found that the committee had proved Specification 5.[19] We disagree. Other than Robertson's testimony that he shared in respondent's profits on some other cases, none of the evidence *100 introduced at the hearings tends to prove that respondent aided and assisted Robertson in the unauthorized practice of law. We do not believe that Robertson's testimony alone without any corrobation or without any evidence of a particular case in which Robertson shared in respondent's profits would be clear and convincing evidence that respondent shared legal fees with a non-lawyer in violation of DR 3-102(A). We also cannot say that there was clear and convincing evidence that showed that respondent aided and assisted a non-lawyer in the unauthorized practice of law in violation of DR 3-101(A). We also find that respondent did not violate DR 1-102(A)(1)(2)(4)(5) and (6) in this matter.
The following specifications of misconduct were made in No. 87-B-0208:[20]
Specification 1 alleged:
That in his capacity as Attorney at Law, Respondent was retained to represent the interests of one Clarence Wilson, Jr., in a matter involving a Workmen's Compensation claim. That a lump sum settlement in the amount of $22,060.00 was obtained on or about December 20, 1983. That settlement accounting and the disbursement of client's funds was handled by an employee of Respondent, to wit, one Rob Robertson. That out of said lump settlement, attorney's fees in the amount of $7,993.64 were charged. That said attorney's fees are in excess of the amount permitted under the Workmen's Compensation statute. That the sum of $250.00 was deducted from the lump sum settlement amount for the payment of depositions when in truth and in fact no depositions were taken in this matter. That Mr. Edwins charged an excessive fee in a Workmen's Compensation case. That Mr. Edwins had failed to render an appropriate accounting of the client's funds to the client; that he had converted the sum of $250.00 of the client's funds to his own use; that he did fail, neglect, or refuse to obtain the approval of the appropriate officials of the Louisiana Department of Labor and/or the judge concerning the amount of this fee; that the [sic] had engaged in conduct involving dishonesty, fraud, deceit or misrepresentation; that he had engaged in conduct that is prejudicial to the administration of justice; that he had engaged in conduct that adversely reflects on his fitness to practice law; all of the above in violation of Disciplinary Rules DR 2-106(A),[[21]] DR 9-102(B)(3),[[22]] and DR 1-102(A)(4)(5)(6)[[23]] of the Code of Professional Responsibility.
Specification 3 alleged:
In connection with the above numbered file, and in connection with the representation as detailed in Specifications Number 1 and 2 above, it is alleged as follows:
That the lump sum settlement draft in the amount of $22,060.00 was deposited in an account entitled John Day, by Rob Robertson, account number XX-XXXX-X for the Bank of Iberia. That in doing so, Respondent aided and abetted, or permitted, the commingling and conversion and his client's funds to the use of person other than the client. The above misconduct is in violation of Disciplinary Rules DR 9-102[[24]] and DR 1-102(A)(4)(5)(6)[[25]] of the Code of Professional Responsibility of the Louisiana State Bar Association.
The evidence submitted at the hearings established that Clarence Wilson, Jr., a laborer with a seventh grade education, approached Richard Robertson to seek some assistance in dealing with a worker's compensation matter. Aetna, the compensation *101 carrier for Wilson's employer, had terminated Wilson's benefits. Wilson had been getting worker's compensation checks in the amount of $408 every two weeks. Wilson testified that he could not recall when he started to receive these checks. He also could not recall the date when he first consulted with Robertson or the date Aetna had the checks stopped.
After respondent began his representation of Wilson, Wilson's benefits were reinstated. Thereafter, the checks began to be sent to Robertson's office and Robertson began to withhold at least $100 of $408 payments from Wilson. Robertson testified that he withheld some of Wilson's money in order to be repaid for money that he had lent Wilson. However, Robertson was unable to produce any record or document that showed how much money had been loaned or how much money Robertson had withheld from Wilson.
Late in 1983, Aetna reached a settlement agreement with Robertson and respondent. The settlement consisted of a $22,060 lump sum payment plus payments of $350 per month beginning January 26, 1984, for a total of 48 months. The $22,060 settlement check was signed by Wilson and respondent and then deposited in Robertson's John Day account. A check for $14,066.36 was given to Wilson. Wilson was given the following accounting:

$37,020.00 $ 10% = 3,702.00] Each add. $10,000.00
$10,000.00 $ 20% = 2,000.00] Covers 1st $10,000.00
$ 7,916.41 $ 10% = 791.64 Medical
 _________
 $6,493.64
Medical Reports $250.00
Deposition $250.00
Travel and Expenses $500.00
Long Distance calls, Research
 and Administration $ 500.00
 _________
 $1,500.00
Due Attorney $7,993.64
Due Client $14,066.36

Total Settlement is $71,736.41
No one who testified during the hearings could explain where the number $71,736.41 came from. However, the numbers $37,020, $10,000 and $7,916.41 can be explained as follows: The $408 twice per month payments made prior to this settlement agreement totaled $8,160 plus the lump sum settlement of $22,060 plus the $350 per month future payments for 48 months ($16,800) equals $47,020 (which explains the $37,020 and $10,000). The $7,916.41 consisted of medical expenses paid by Aetna prior to the settlement.
As can be seen from the above explanation and the statement given to Wilson, respondent applied the percentages required under La.R.S. 23:1141 not only to the lump sum payment made at the time of settlement but also applied the percentages to the full amount of the future payments that would be made to Wilson and to the past payments made to Wilson even though at least some of those past payments were made before respondent began the representation of Wilson. Clearly, respondent was not allowed to base his fee on payments made to his client before his entrance into the case. Respondent was also not allowed to base his fee on the full amount of the future payments to Wilson. When, as here, the future compensation payments have been fixed in a court approved settlement, the attorney fees when taken up front must be based on the percentage of the discounted or present value of these future payments.
As for as the $1,500 listed in the above statement for medical reports, deposition, travel and expenses and long distance calls and research and administration, respondent failed to supply any documentation including bills and cancelled checks. The testimony explaining these items can be described at best as vague. Even though it may have been permissible for respondent to have charged Wilson for some of these items, respondent's failure to properly account for them or even show that any of them were actually paid means that respondent was not allowed to charge Wilson that $1,500.
Thus, the amount of the fees that can be considered excess should be equal to the $1,500 expenses that respondent is unable to account for plus the amount of the fee that is based on the compensation benefits that Wilson received prior to respondent's entrance into the case plus the amount of the fee that is based on the difference between the present value of the future *102 payments and the full value of the future payments and plus the amount of money withheld by Robertson from Wilson's benefits.
The commissioner found that the committee proved Specifications 1 and 3 in their entirety.[26] We concur with the commissioner's finding that respondent failed to render an appropriate accounting of the funds to Wilson in violation of DR 9-102(B)(3). We also concur with the commissioner's finding that respondent charged a fee in excess of the amount permitted under the worker's compensation statute in violation of DR 2-106(A). We concur with the commissioner's finding that by allowing the settlement check to be deposited in Robertson's John Day account, respondent permitted the commingling of his client's funds in violation of DR 9-102. However, we do not concur with the commissioner's finding that respondent converted any of the funds belonging to his client. As stated in 86-B-0924, the mere charging of an illegal fee is not enough to make the attorney guilty of conversion. There was no showing during the hearings that any of the excessive fee was converted to respondent's personal use or the personal use of his employee. We do find that respondent violated DR 1-102(A)(5) and (6) in this matter. However, we do not find that respondent violated DR 1-102(A)(4).
Having found respondent guilty of three specifications of misconduct in 86-B-0924 and partially guilty of two other specifications of misconduct in 87-B-0208, we consider that disciplinary action is warranted. Respondent has been found guilty of failing to render an appropriate accounting to his client, failing to maintain complete records of the funds of a client, failing to promptly deliver to the client funds in his possession which the client was entitled to receive, charging his client an excessive fee and commingling his client's funds in two separate cases.
The purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession and to deter other lawyers from engaging in violations of the Code of Professional Responsibility. The discipline to be imposed will depend upon the seriousness of the offense involved and the facts and circumstances of each case. The court will take into account both aggravating and mitigating circumstances. ABA Standards For Imposing Lawyer Sanctions § 9.1 (1986) [hereinafter cited as Standards].
We find the following aggravating factors listed in Standards § 9.22 are present in respondent's case: (a) prior disciplinary offenses;[27] (b) dishonest or selfish motive;[28] (c) a pattern of misconduct; (d) multiple offenses; (g) refusal to acknowledge wrongful nature of conduct; (h) vulnerability of victim; (i) substantial experience in the practice of law; and (j) indifference to making restitution.[29]
The only three mitigating factors that apply to respondent are (h) physical or *103 mental disability,[30] (k) imposition of other penalties or sanctions and (m) remoteness of prior offenses.[31]
Taking into account the aggravating factors as well as the mitigating factors, we do not find that respondent should be disbarred. Rather, we consider that respondent should be suspended from the practice of law for two years from the date of this decree.[32] However, reinstatement will not be automatic. Respondent may apply for reinstatement after the lapse of the two-year period upon a showing to the committee that he has made restitution to his clients for excessive fees charged. The excessive fees charged includes $4,500 in the Jefferson case (86-B-0924). They also include the $1,500 of expenses that respondent is unable to account for, the amount of the fee that is based on the compensation benefits that Wilson received prior to respondent's entrance into the case, the amount of the fee that is based on the difference between the present value of the future payments that Wilson will receive and the full value of those future payments and the amount of money withheld by Robertson from Wilson's benefits in 87-B-0208. Respondent should also be responsible for the repayment of the balance of the loan made by Jefferson to Robertson.

DECREE
For the reasons assigned, it is ordered, adjudged and decreed that Rallie C. Edwins be suspended from the practice of law in Louisiana for two years from the date of finality of this judgment with reinstatement conditioned upon respondent's providing proof to the committee that he has made full restitution of the amounts owed to his clients as aforesaid.
NOTES
[1] The commissioner's hearing in 86-B-0924 had been held prior to the motion for consolidation. Thus, the commissioner's hearing for 87-B-0208 was held and two commissioner reports were subsequently filed.
[2] DR 9-102(A) provides:

(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
(1) Funds reasonably sufficient to pay bank charges may be deposited therein.
(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
[3] DR 1-102(A) provides:

A lawyer shall not:
(1) Violate a Disciplinary Rule.
(2) Circumvent a Disciplinary Rule through actions of another.
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.
[4] The committee concurred in this finding.
[5] DR 9-102(B)(3) and (4) provides:

(B) A lawyer shall:
(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.
[6] Supra note 3.
[7] The committee concurred in this finding.
[8] La.R.S. 23:1141 provides:

A. Claims of attorneys for legal services arising under this Chapter shall not be enforceable unless reviewed and approved by the director, or, if proceedings are brought under R.S. 23:1311, by the court. If so approved, such claims shall have a privilege upon the compensation payable or awarded, but shall be paid therefrom only in the manner fixed by the director or court.
B. In no case shall the fees of an attorney who renders service for an employee coming under this Chapter exceed twenty percent of the first ten thousand dollars of any award and ten percent of the part of any award in excess of ten thousand dollars.
[9] Supra note 3.
[10] DR 2-106 provides:

(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.
. . . .
[11] of the first $10,000 of the $65,500 = $2,000
10% of the next $55,500 of the $65,500 = 5,500
 ______
 $7,500

[12] The committee concurred in this finding.
[13] Supra note 3.
[14] DR 7-101(A)(3) provides:

(A) A lawyer shall not intentionally:
. . . .
(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7-102(B).
[15] DR 9-102(B) provides:

(B) A lawyer shall:
(1) Promptly notify a client of the receipt of his funds, securities, or other properties.
(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.
[16] Supra note 3.
[17] DR 3-101(A) provides:

(A) A lawyer shall not aid a nonlawyer in the unauthorized practice of law.
[18] DR 3-102(A) provides:

(A) A lawyer or law firm shall not share legal fees with a non-lawyer, except that:
(1) An agreement by a lawyer with his firm, partner, or associate may provide for the payment of money, over a reasonable period of time after his death, to his estate or to one or more specified persons.
(2) A lawyer who undertakes to complete unfinished legal business of a deceased lawyer may pay to the estate of the deceased lawyer that proportion of the total compensation that fairly represents the services rendered by the deceased lawyer.
(3) A lawyer or law firm may include non-lawyer employees in a retirement plan, even though the plan is based in whole or in part on a profitsharing arrangement.
[19] The committee concurred in this finding.
[20] The committee found that the evidence did not support the charges set forth in Specification 2, alleging that respondent aided and abetted Robertson, a non-lawyer, in the practice of law. The commissioner agreed with the committee on this finding. Since the committee concurred with the commissioner on this finding, Specification 2 is not before this court.
[21] Supra note 10.
[22] Supra note 5.
[23] Supra note 3.
[24] For DR 9-102(A), see supra note 2. For DR 9-102(B), see supra note 15.
[25] Supra note 3.
[26] The committee concurred in these findings.
[27] Respondent was suspended for thirty days from the practice of law for making cash advances to his client with the intention of securing or keeping the legal representation of his client. Respondent was also suspended for 90 days for soliciting employment. See Louisiana State Bar Association v. Edwins, 329 So.2d 437 (La.1976).
[28] During the hearings, the bar association attorney questioned respondent about his reason for charging a fee in excess of the statutory maximum:

Q. We understand that, we understand that. Is it your custom to charge the fees of investigators that you retain against your clients' recovery?
A. My contract of employment with this man, which is in evidence, says that I would take the statutory fee plus expenses, and obviously you can't take one of these comp cases at the amount of money that the statute lets you get without getting expenses. You'd be an idiot handling one of the cases.
[29] The only aggravating factors not present are:

(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency and (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process.
[30] During the period of respondent's representation of these clients, respondent was suffering from severe back problems for which he was under constant care.
[31] The mitigating factors not present in this case are: (a) absence of a prior disciplinary record; (b) absence of a dishonest or selfish motive; (c) personal or emotional problems; (d) timely good faith effort to make restitution or to rectify consequences of misconduct; (e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (f) inexperience in the practice of law; (g) character or reputation (no character or reputation evidence was presented at the hearings in either case); (i) delay in disciplinary proceedings; (j) interim rehabilitation; (l) remorse.
[32] Unlike the commissioner's finding in 87-B-0208 and the committee's finding in both cases, we do not find that respondent is guilty of conversion. Also, unlike the commissioner and the committee's finding in 86-B-0924, we do not find that respondent is guilty of aiding and abetting a non-lawyer in the unauthorized practice of law. Accordingly, we are imposing a less severe sanction than recommended by the commissioner or the committee.