511 So.2d 1137 (1987)
LOUISIANA STATE BAR ASSOCIATION
v.
Henry L. KLEIN.
No. 86-B-1368.
Supreme Court of Louisiana.
September 9, 1987.
Rehearing Granted in Part and Denied in Part October 8, 1987.
Thomas O. Collins, Jr., G. Fred Ours, New Orleans, Gerald F. Thomas, Natchitoches, Roland J. Achee, Shreveport, Robert J. Boudreau, Lake Charles, Robert M. Contois, New Orleans, Frank J. Gremillion, Baton Rouge, Carrick R. Inabnett, Monroe, Harvey Lewis, New Orleans, Alfred S. Landry, New Iberia, and Philippi P. St. Pe, Metairie, for applicant.
Henry L. Klein, pro se.
Cecil M. Burglass, Jr. and Willard W. Hill, Jr., New Orleans, for respondent.
WATSON, Justice.
In this disciplinary proceeding by the Louisiana State Bar Association against one of its members, Henry L. Klein, the Supreme Court of Louisiana has original jurisdiction.[1]
Henry L. Klein, aged forty-one, has been a practicing attorney since his graduation from Tulane Law School in 1968. Following an automobile accident on February 12, 1984, Florence Wintter, a domestic employee in the household of Klein and his mother, retained Klein as her attorney. She had a hairline fracture of the right wrist, bruises and abrasions on the right ankle, a cut on the right knee, a cervical sprain, a scar on her forehead and a black eye. She signed a contingency fee agreement calling for a one-third attorney's fee before suit and forty percent after suit. She was treated for the whiplash and fractured right wrist for approximately four and a half months before being released by her doctor with no residual impairment on June 7, 1984.[2]
After her discharge, Klein negotiated a settlement with State Farm of $12,500 on June 11, 1984.[3] Since he advised Wintter that this was what her whiplash and fractured wrist were worth, she authorized him to settle the case. Because she was anxious to have the money to pay a $5,000 bank note and other bills, he sent someone to pick up the check. She authorized its deposit in order to collect the funds as soon as possible. A release was mailed to her. On June 12th Klein went out of town. On July 9th, when he called Florence Wintter about the release, she said she wanted to cancel the settlement because she wanted to net $12,500. Klein called Gary Suer with State Farm but was told that State Farm intended to adhere to the settlement.
*1138 The check had been deposited in Klein's trust account. The balance in the trust account remained in excess of the settlement amount until the end of June. On July 25, 1984, the gross amount in Klein's trust account fell below the amount due Florence Wintter, and it remained below that amount until October.[4] In August, Klein went over comparable cases with Wintter to convince her that the settlement was a good one, but she refused to sign the release or accept the settlement.
According to the testimony of Gerald Webre, one of Wintter's subsequent attorneys, the original gross settlement of $12,500 was not an unreasonable one, although slightly on the low side.
Klein had a problem because the insurance company regarded the case as settled but his client would not agree. Klein felt he had a responsibility to abide by his commitment to State Farm.
According to Klein, since State Farm refused to consider any more money and Florence Wintter refused to accept the settlement, he had "bought the case".[5] He contemplated an eventual settlement with Florence Wintter at what he hoped would be a reasonable sum. His current bookkeeper said his books, records, and bank accounts were in a state of chaos at the time, but there is no question that he could have paid any reasonable amount despite his problems. Klein admitted to using extremely poor judgment.
In January of 1985, as the prescription date approached, Florence Wintter agreed to take $10,000 and Klein decided to absorb the loss in order to get rid of the matter. He executed a bogus settlement sheet reflecting a $15,000 settlement; Florence Wintter was to receive $10,000 minus $185 which had been paid to Dr. Aiken. She was given a check for $9,815. Klein told her to put the check in the bank. Instead she attempted to have the check certified on February 1, 1985, a Friday.
Jesse McGee, an employee of the Bank of Louisiana who knew Klein as a bank client, testified that Klein had a $100,000 line of credit with the bank. When Florence Wintter came to the bank to cash Klein's check, McGee checked with the bank's computer. There were insufficient available funds in Klein's account, although the uncollected balance was in excess of the amount of the check. McGee contacted Klein who said he would be right over to handle the check, but Florence Wintter got irritated and stormed out of the bank to the offices of State Farm and the Bar Association.
Even if the available funds in Klein's account had exceeded the amount of the check, McGee would not have paid it without checking with Klein to verify the identity of the client. If Klein had instructed him on the phone to pay the check, McGee would have done so by drawing on Klein's line of credit. The only person that could have authorized certification of the check was Klein.
When Klein arrived at the bank a few minutes later, he decided Florence Wintter must be concerned about her bank note. He obtained a $5,200 cashier's check which he attempted to deliver to her. Klein left the cashier's check with one of Florence Wintter's employers with a message to come to his office for the balance.
According to Klein, Wintter's boyfriend told him they had discovered that he had not filed suit and had settled the case in June, and it would take $45,000 to complete the matter. Klein regarded this as extortion. Florence Wintter then wrote him a letter discharging him. Her new lawyer advised him that Wintter would settle for $25,000 and filed suit.[6] Meanwhile, she *1139 had filed a complaint with the Bar Association. Klein finally paid $15,400 to settle the case. The attorney's fee and expenses were $2,900 leaving Florence Wintter with $12,500 which she described as the amount she should have gotten in the first place. During this time, Klein testified that he was going through traumatic divorce and custody proceedings and had turned to alcohol for surcease. The divorce did not become final until March of 1985.
There is no question that Henry Klein is guilty of deceiving Florence Wintter and converting and comingling funds which belonged to State Farm Insurance Company. As it turned out, no one was financially harmed. State Farm preserved its $12,500 settlement and Florence Wintter received $12,500.[7]
The Louisiana State Bar Association has clearly proven that Klein engaged in conduct prejudicial to the administration of justice and conduct which adversely reflects on his fitness to practice law and also was guilty of deceiving and misrepresenting his client.[8]
After a hearing, the Commissioner concluded that Klein's alcoholism had affected his judgment in the case, but that this did not excuse his deceitful course of conduct with Florence Wintter. The Commissioner concluded that the appropriate punishment was a public reprimand.
The Committee on Professional Responsibility of the Louisiana State Bar Association opposes the Commissioner's recommendation of a public reprimand, argues that Klein converted funds belonging to another, and the appropriate penalty is a two year suspension from the practice of law.[9] However, the Commissioner correctly concluded that the spirit but not the letter of DR 9-102[10] was violated.
Comingling and conversion of a client's funds is one of the gravest forms of professional misconduct and generally warrants disbarment. However, Klein was not technically guilty of that offense because these funds were not the property of his client. The client had specifically rejected the settlement, *1140 and the funds belonged to State Farm Insurance Company.[11]
There was extensive testimony about Klein's sterling character and outstanding legal ability. During 1984 and most of 1985, Klein had trouble coping with his practice because of marital problems and became increasingly dependent upon alcohol. He entered a substance abuse program and has recovered from his alcoholism. Prior to his recovery, there was testimony that Klein's judgment was impaired by his consumption of alcohol.
As Klein admitted, he exercised very poor judgment in using the funds. They did not belong to him. On the other hand, State Farm did not want to cancel the settlement and Florence Wintter refused to accept her legal portion of the settlement. In this peculiar fact situation, the Commissioner correctly found that Henry Klein violated the spirit of the canon, but he did not convert and comingle his client's funds. His greatest offense was deceiving his client. In this respect, the matter is quite similar to Louisiana State Bar Ass'n v. Horton, 504 So.2d 828 (La.1987). The testimony that Klein was at all times able to pay Florence Wintter and could have obtained the necessary funds from the Bank of Louisiana or other sources available to him was uncontroverted.
Considering the testimony as to character and reputation presented by Henry Klein, the mitigating circumstances which clouded his judgment at the time, and his rehabilitation, the Committee's recommendation that Klein be suspended for a period of two years is unduly harsh. An attorney who is guilty of one lapse in an otherwise distinguished career should not be sentenced on the basis of a mechanical and arbitrary rule of thumb. In all cases, sentencing must be tailored to the particular offender and the circumstances of the offense.
Under the circumstances, a suspension of ninety days from the practice of law is an appropriate sanction.[12]
IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Henry L. Klein be suspended from the practice of law for a period of ninety days from the date of finality of this judgment.
DENNIS, J., concurs in part, dissents in part, and assigns reasons.
DENNIS, Justice, concurring in part, dissenting in part.
I concur in the majority's finding that the respondent violated the rules of professional conduct.
I dissent from the majority's finding that the respondent was not guilty of violating DR 9-102 by converting this client's money to his own use. The lawyer was authorized by his client to settle the case for $12,500. Therefore, when he accepted this amount in settlement, the funds became the property of his client. He intentionally converted the money when he transferred the funds to his operating account. He compounded this misconduct by lying to his client and attempting to mislead her with bogus settlement documents.
I dissent from the sanction imposed by the majority as being indulgently inconsistent with the discipline applied to other attorneys in similar cases. In LSBA v. Hinrichs, 486 So.2d 116 (1986) this court established factual standards to guide itself in selecting the proper sanction for an attorney found guilty of violating DR 9-102 in mishandling his client's funds. Disbarment or a three year suspension should be imposed where the lawyer is guilty of bad faith and intends a result inconsistent with his client's interest; the lawyer commits fraudulent acts in connection with the violation; and the magnitude of the damage, expense or inconvenience caused the client is great. 486 So.2d at 122. By its failure to adhere to this standard the majority creates inequality and unfairness in the *1141 enforcement of the rules of professional conduct.

On Application for Rehearing.
PER CURIAM
The decree on original hearing is amended to make the suspension effective on February 1,1988. Otherwise, the application is denied.
NOTES
[1] LSA-Const. 1974, Art. V, § 5(B).
[2] State Farm paid $2,675 for the total loss of Florence Wintter's automobile. Klein took twenty-five percent of that amount as his fee. He described this as a good settlement because her car was not worth that much.
[3] Wintter would have netted approximately $6,400 after payment of attorney's fees and expenses.
[4] On October 31, 1984, the balance in the trust account was $16,485.90.
[5] Commissioner's Hearing, January 13, 1987, p. 18.
[6] In that lawsuit, Florence Wintter's sworn affidavit attests that she did not authorize the settlement or her signature on the settlement check. At the investigatory hearing, she said under oath:

"... Then his friend called and said he has got a settlement for me twelve-five, they couldn't get fifteen, they could get twelve-five. I said. `Fine, I will take that, you know, that is okay.' (Investigatory Hearing, p. 19)
* * * * * *
"Q. Did you ever agree to accept a settlement in the amount of $12,500?
* * * * * *
"A. I told him, yes, I did, but I was misled. (Investigatory Hearing, p. 20)
* * * * * *
"Q. Now, did you at any time reject this $12,500 settlement?
"A. Yes, I did.
"Q. And do you remember about when that was?
"A. I guess it was around, I think, it was
August.... " (Investigatory Hearing, p. 22)
Some conflict is apparent.
* * * * * *
[7] Klein remains responsible for a medical bill of $700.
[8] Rule 1-102(A)(4), (5) and (6) of the Code of Professional Responsibility provides:

"(A) A lawyer shall not:
* * * * * *
"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
"(5) Engage in conduct that is prejudicial to the administration of justice.
"(6) Engage in any other conduct that adversely reflects on his fitness to practice law."
[9] See Louisiana State Bar Ass'n v. Hinrichs, 486 So.2d 116 (La.1986).
[10] Rule 9-102 of the Code of Professional Responsibility provides in pertinent part:

"(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank or insured depository institution accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
"(1) Funds reasonably sufficient to pay bank charges may be deposited therein.
"(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
"(B) A lawyer shall:
"(1) Promptly notify a client of the receipt of his funds, securities, or other properties.
"(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
"(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
"(4) Promptly pay or deliver to the client as requested by a client the funds, securities or other properties in the possession of the lawyer which the client is entitled to receive."
[11] There was a judicial determination that the money belonged to State Farm. In the lawsuit filed on behalf of Florence Wintter, an exception of res judicata by State Farm was denied.
[12] The motion by Klein to remand the matter for further consideration by the Committee on Professional Responsibility of the Louisiana State Bar Association is denied.