520 So.2d 410 (1988)
LOUISIANA STATE BAR ASSOCIATION
v.
Overton C. THIERRY.
Nos. 87-B-0236, 87-B-0899.
Supreme Court of Louisiana.
March 2, 1988.
Rehearing Denied April 22, 1988.
Thomas O. Collins, Jr., G. Fred Ours, New Orleans, Gerald F. Thomas, Natchitoches, Roland J. Achee, Shreveport, Robert J. Boudreau, Robert M. Contois, New Orleans, Frank J. Gremillion, Baton Rouge, Carrick R. Inabnett, Monroe, Harvey Lewis, New Orleans, Alfred S. Landry, New Iberia, Philippi P. St. Pe', Metairie, for applicant.
Lolis E. Elie, New Orleans, for respondent.
*411 LEMMON, Justice.
These are consolidated disciplinary proceedings against a member of the bar under this court's original jurisdiction. La. Const. art. V, § 5(B). At issue are six specifications of misconduct involving respondent's dealings with three separate clients.
The Riley Matter
Respondent represented Allen Riley in a personal injury claim. The claim was compromised, and respondent received a settlement check in the amount of $3,983 on September 24, 1985. After the client endorsed the check, respondent did not deposit the check into his trust account, but rather cashed it at a check cashing company. On the same day respondent furnished $822 by Western Union to the client, who lived in another area, but did not render an accounting.
The client attempted over the next two months to contact respondent to complete the settlement, but was unsuccessful. The client therefore filed a complaint with the Bar Association, expressing concern that he didn't know how much was still due to him. On March 20, 1986, respondent met with the client and showed him a written accounting of the settlement funds, which noted that respondent had advanced $348 to the client prior to the settlement. Respondent gave the client an additional $142 and obtained the client's signature on a letter to the Bar Association withdrawing the complaint. Subsequently, the client hired respondent again to handle another personal injury claim.
The commissioner appointed by this court found that respondent failed to render a prompt accounting in violation of DR 9-102(B)(3), failed to deposit the client's funds into an identifiable trust account in violation of DR 9-102(A), and failed to pay timely on the client's behalf the medical expenses incurred by the client and payable from the settlement funds in violation of DR 9-102(B)(4).[1]
We conclude that the above described misconduct was proved by clear and convincing evidence. Moreover, the Bar Association further proved that respondent converted some part of the client's funds to his own use for approximately six months before he finally rendered an accounting, paid the remaining medical expenses due by the client from the settlement, and furnished the client with the $142 balance of the funds.[2]
The Hogan Matter
Respondent represented Edward Hogan in a personal injury case, but the client died while the claim was pending. Respondent then undertook to handle the succession, probating the will and having the co-executrixes appointed by the court.
In April, 1985, respondent settled the pending tort claim and received two checks, one for $12,000 on April 24 and one for $31,000 on May 6, 1985. The co-executrixes endorsed the checks, and respondent furnished a preliminary accounting, telling them they would receive Hogan's share of the funds in about ten days.
On May 15 respondent deposited the $12,000 check into a bank account (other than a trust account) and the $31,000 check into his trust account. By June 4 the trust account was overdrawn, although respondent had not remitted any funds to the succession representatives or rendered any *412 further accounting of the settlement proceeds.
On July 31, 1985, the co-executrix filed a complaint with the Bar Association. She complained that it was virtually impossible to communicate with respondent and that he had put her off on the basis that the succession couldn't be completed until a suit against Hogan was concluded and Hogan's interest in certain real estate was determined.[3] On August 20, 1985, respondent rendered a revised accounting. On September 12, 1985, the co-executrix terminated respondent's representation and requested delivery of the files.
On January 24, 1986 respondent obtained a cashier's check payable to himself in the sum of $24,985.93, the exact amount due the succession. The co-executrixes finally received the funds from respondent on February 3, 1986, almost ten months after respondent deposited the settlement checks.
Respondent testified that, shortly after making the deposits, he had withdrawn the $12,000 from his general account and $15,000 of the $31,000 from his trust account. He stated that he had placed the funds in his former law partner's vault, because his trust account had previously been seized, and had used the $27,000 from the vault to obtain the cashier's check.
As to the delay in disbursing the funds, respondent explained that he intended to complete the succession and make a final disbursement of all funds. He also asserted that the co-executrixes did not get along and failed to communicate with each other on his progress with the succession.
The commissioner found that respondent failed to maintain the client's funds in an identifiable trust account in violation of DR 9-102(A) and to pay the funds due the client promptly in violation of DR 9-102(B)(4).
We conclude that the above described misconduct was proved by clear and convincing evidence. Even if the succession could not be completed at the time, respondent had an obligation to place his client's share of the funds in a succession account, and certainly respondent had absolutely no excuse for failing to do so after he was terminated as succession attorney.[4] Moreover, the fact that funds in respondent's trust account had previously been seized was an even more compelling reason to place the funds in a succession account as soon as possible.
We further conclude that the Bar Association also proved that respondent converted the client's funds to his own use. When the Bar Association proves an attorney failed to deposit his client's funds in an identifiable trust account separate from the attorney's own funds, the likelihood of conversion is so great, and the policy of professional responsibility in protecting the client from such risks so strong, that the burden is placed on the attorney both to go forward with the evidence and to persuade the court that there was no conversion of the client's funds. Louisiana State Bar Association v. Krasnoff, 488 So.2d 1002 (La.1986); Louisiana State Bar Association v. Williams, 512 So.2d 404 (La.1987). Here, respondent utterly failed to bear this burden.[5]
The Delone Matter
On July 20, 1985, respondent issued a $600 check drawn on his trust account as a loan to his client, James Delone. The check was returned by the bank because the account did not have sufficient funds. The evidence also established that respondent had issued checks on the trust account sixty-four times during a one-year period without sufficient funds to cover the checks when presented for payment.
*413 The Bar Association charged respondent with dishonesty and deceit by the frequent issuance of checks with insufficient funds in his trust account and with commingling and conversion of funds belonging to one or more clients.
Respondent issued the $600 check to Delone as a loan. At the time respondent was not holding any funds belonging to that client and did not owe that client any money. Hence there was no showing that any of Delone's funds were commingled or converted.
Moreover, the record does not establish that any particular client's funds were in the trust account when the overdraft checks were written. Thus, the evidence, although showing that respondent mismanaged his trust account and used the account in a manner contrary to its purpose, does not establish the commingling or conversion of the funds of a particular client.
Discipline
The commissioner did not issue a recommendation of penalty. The Bar Association argues that respondent should be disbarred.
The most serious misconduct by respondent involved commingling and conversion of clients' funds in the Hogan matter. Restitution was made, but not until after the client complained to the Bar Association.
In Louisiana State Bar Association v. Hinrichs, 486 So.2d 116 (La.1986), this court set forth guidelines for imposing sanctions in cases of commingling and conversion of client's funds in violation of DR 9-102(A). Under the guidelines, disbarment is generally appropriate when one or more of the following elements are present: the lawyer acts in bad faith and intends a result inconsistent with his client's interest; the lawyer commits forgery or other fraudulent acts in connection with the violation; the magnitude or the duration of the deprivation is extensive; the magnitude of the damage or risk of damage, expense and inconvenience caused the client is great; the lawyer either fails to make full restitution or does so tardily after extended pressure of disciplinary or legal proceedings. A three-year suspension is usually appropriate when similar but less aggravated factors are present, such as when the lawyer is guilty of at least a high degree of negligence in causing his client's funds to be withdrawn or retained in violation of the disciplinary rule, but does not commit other fraudulent acts in connection therewith; the lawyer benefits from the infraction but, in contrast with disbarment cases, the client may not be greatly harmed or exposed to great risk of harm; and the lawyer fully reimburses or pays his client the funds due without legal proceedings. A one-year suspension is usually appropriate when the negligence in withdrawing or retaining client funds is not gross or of a high degree; no other fraudulent acts are committed in connection with the violation of the disciplinary rule; there is no serious harm or threat of harm to the client; and full restitution is made promptly, usually before any legal proceeding or disciplinary complaint is made.[6]
Here, respondent was negligent in retaining his clients' funds, but not guilty of forgery or other fraudulent acts which would warrant disbarment. Although the attorney benefitted from the infraction, the clients were not greatly harmed, and the funds were fully reimbursed without the necessity of extensive disciplinary or legal proceedings. These elements, when considered with the aggravating factors, warrant the penalty of a three-year suspension. Respondent was previously disbarred in 1978 for suborning perjury. See Louisiana State Bar Association v. Thierry, 366 So.2d 1305 (La.1978). Respondent had substantial experience in the practice of law, and his use of the clients' funds can only be explained by indifference or selfish motives. See the mitigating factors listed in Standards for Imposing Lawyer Sanctions § 9.22 (1986).
*414 There were two mitigating factors. Respondent did make restitution, although not until after a complaint was lodged with the Bar Association, and his prior sanction is relatively remote in time to the present violations.[7] See the mitigating factors listed in Standards for Imposing Lawyer Sanctions § 9.32 (1986). Nevertheless, these factors are not significant enough to justify a lesser penalty.
Accordingly, it is ordered that Overton C. Thierry be suspended from the practice of law for a period of three years, effective upon the finality of this decision. All costs of the proceedings are assessed to respondent.
NOTES
[1] In response to notice of the complaint, respondent forwarded to the Bar Association five checks written on the trust account at the same time as the $142 check. Respondent represented that these checks had been furnished to the providers of medical services. Since only one of the checks had cleared the bank, it was obvious that the other four had not been used for payment of medical expenses. The Bar Association then filed a new specification, charging respondent with attempting to deceive. Because the medical expenses were otherwise paid, although untimely and with funds other than from the client's trust account, we conclude that intent to deceive was not proved by clear and convincing evidence.
[2] Respondent asserted that he paid the $142 to the client as a "bonus" (after the complaint had been filed), insisting that the client owed him more than that amount for prior legal services. This dispute, of course, could have been avoided by a timely accounting at the time of the settlement.
[3] Other counsel had been employed by Hogan to defend the lawsuit against Hogan and to determine Hogan's interest in the property in Ascension Parish.
[4] The Bar Association also charged respondent with neglecting a legal matter entrusted to him by not completing the succession, but this specification was not proved by clear and convincing evidence.
[5] Respondent even failed to call his former law partner to verify that respondent had placed the funds in his vault.
[6] A suspension of eighteen months to two years is appropriate when there are significant mitigating circumstances in what would otherwise be categorized as a three-year case or there were significant aggravating circumstances in what would otherwise be a one-year case.
[7] Withdrawal of the complaint should not be considered as a mitigating factor. Standards for Imposing Lawyer Sanctions § 9.4 (1986).