540 So.2d 294 (1989)
LOUISIANA STATE BAR ASSOCIATION
v.
Rallie C. EDWINS.
No. 87-B-2382.
Supreme Court of Louisiana.
March 13, 1989.
*296 Thomas O. Collins, Jr., G. Fred Ours, New Orleans, Gerard F. Thomas, Natchitoches, Roland J. Achee, Shreveport, Robert J. Boudreau, Lake Charles, Robert M. Contois, New Orleans, Frank J. Gremillion, Baton Rouge, Carrick R. Inabnett, Monroe, Harvey Lewis, New Orleans, Alfred S. Landry, New Iberia, Philippi P. St. Pé, Metairie, Trevor G. Bryan, Elizabeth A. Alston, New Orleans, Christine Lipsey, Baton Rouge, for applicant.
Rallie C. Edwins, Baton Rouge, for respondent.
DENNIS, Justice.
This is an attorney disciplinary proceeding in which the bar association seeks to disbar the respondent attorney, Rallie C. Edwins.
The respondent, who was admitted to practice in 1958, is charged with violating (1) Disciplinary Rule 3-101(A), Code of Professional Responsibility of the State Bar, by aiding and abetting an unlicensed person to practice law in Louisiana, (2) Disciplinary Rule 3-102 by sharing legal fees with a non-lawyer, (3) Disciplinary Rule *297 6-101(A)(3) by neglecting a legal matter entrusted to him, and (4) Disciplinary Rule 9-102 by failing to place his client's funds in a separate trust account, by failing to notify his client promptly of receipt of the funds, by failing to maintain complete records of his client's funds, by failing to render appropriate accounts to his client regarding them, and by failing to promptly pay or deliver to his client the funds he was entitled to receive.
We find that the respondent committed three of the alleged violations, viz., (1), (3) and (4), and impose a sanction of disbarment.

1. Whether Respondent Aided A Non-Lawyer In The Unauthorized Practice of Law

Facts
Prior to 1982, Rob Robertson, operated a free lance paralegal service in New Iberia under the name of Prepaid Legal Services, Inc. He maintained a small one paralegal office for himself in which he employed his daughter as a secretary. Sometime in 1982, Robertson entered a relationship with Edwins, a Baton Rouge attorney, whereby Robertson became Edwins' paralegal, investigator and client-relations representative in the New Iberia area. Edwins employed Robertson on an hourly basis to investigate, screen and evaluate the claims of prospective clients, do legal research, maintain client relations and perform other services. Under the arrangement, Edwins continued to maintain his law office in Baton Rouge but also used the New Iberia office as a branch law office. The Prepaid Legal Services, Inc. sign was taken down and replaced with the sign of Edwins' law firm. Edwins paid part of the office expenses, including rent, secretary and utilities.
In December, 1982, William Livingston conferred with Robertson about personal injuries he had received in an automobile accident. Livingston testified that Robertson told him he was an attorney and agreed to handle his case for a contingent fee. According to Livingston, Robertson agreed to take the case for 30% of recovery before trial and 40% of recovery in court. Sometime after the attorney-client contract had been entered Robertson disclosed to Livingston that Edwins would act as his attorney and that Robertson was Edwins' associate. Livingston did not meet Edwins until after the suit was filed.
Livingston's case was settled in March, 1984. He testified that before Robertson called him and told him to come get his money that he had had no conversations or correspondence with either Robertson or Edwins about the settlement. He said he went to Robertson's office that same day and Robertson gave him $1,000 in cash with the explanation that the rest of the settlement proceeds had been used to pay expenses. He said that Robertson did not tell him the total amount for which his case had been settled, the amount of the attorney's fees he had been charged or the description or the amounts of the expense items deducted from his recovery. Livingston admitted that he may have signed a release but testified that he was not certain because he could not read or write.
Although Robertson failed to testify categorically that he did not hold himself out to be a lawyer to Livingston he did say that he did not tell Livingston he was an attorney, but agreed to investigate the case and present it to Edwins if it appeared to have merit. He added later in his testimony that Livingston could have gotten the impression that he was an attorney because, at Edwins' request, he represented Livingston at a welfare assistance hearing. Robertson admitted that subsequent to the initial interview he represented Edwins in entering an employment contract with Livingston. Further, he testified that his daughter prepared pleadings, motions and legal memoranda in the New Iberia office for Livingston's case. Robertson acknowledged that he signed Edwins' name as attorney to the pleadings and motions, signed for Edwins as notary on an affidavit and filed these legal instruments in court. Robertson also answered and signed for Edwins the interrogatories connected with Livingston's personal injury action. Robertson testified that at this time Edwins was in a hospital in Memphis but that he *298 had dictated the pleadings, motions and memoranda to Robertson's daughter over the telephone. After Edwins left the hospital, Robertson said, he was confined to his Baton Rouge apartment, but the two continued to converse by telephone.
Robertson testified that Edwins negotiated the settlement with the adverse party and mailed him the $9,000 settlement check. He said that when he received the check it contained what purported to be Livingston's endorsement. Livingston and his wife, Theresa Livingston, testified that neither of them had signed the check and that they had never even seen it. Robertson deposited the check in an account over which he had exclusive control and disbursed the funds with his own checks. He was unable to produce any of the cancelled checks to verify his distribution of the funds, however. Nevertheless, he denied that he had received any part of the attorney's fee in the case.
Edwins testified that he never told anyone that Robertson was an attorney or shared legal fees with him. His testimony was ambivalent in other respects, however. Edwins testified in general terms that he had been in the hospital for extensive periods, but he did not corroborate Robertson's testimony regarding Edwins' Memphis hospital and Baton Rouge apartment confinements. Despite his representation by competent counsel during a full hearing he testified and presented documentary evidence only to his confinement in the Baton Rouge Our Lady of the Lake Hospital from September 29, 1984 to October 3, 1984. This evidence was clearly irrelevant to the question of whether Edwins performed legal services for Livingston in absentia from a hospital between December, 1982 and the settlement of Livingston's case in April, 1984.
Although Edwins testified several times that he explained the proposed settlement to Livingston, he could not recall when, where or how the explanation had occurred. Toward the end of his testimony, he admitted that he could remember talking to Livingston's wife and daughter but that Livingston himself had not been told prior to settlement that he would receive only $1,000.
Edwins first testified that he did not authorize Robertson to sign his name to pleadings and that when he learned of Robertson's actions in this regard he put ads in the newspaper announcing the closing of his New Iberia office. A few moments later Edwins admitted, however, that he had authorized Robertson, and perhaps others, to sign his name to pleadings when he was in the hospital. Moreover, he conceded that Livingston's file was kept in the New Iberia office, not in his Baton Rouge office, and no one ever indicated that the file or any part thereof had ever been transported to him to facilitate his performance of legal services while confined to a hospital.
Regarding the disbursement of the settlement funds, Edwins admitted that he received them from the adverse party but that he did not place them in a client's trust account, keep records of such funds, notify Livingston of his receipt of them, deliver any portion of them to Livingston, or render an accounting of such funds to Livingston. Instead, Edwins testified, he endorsed the settlement check and mailed it to Robertson with instructions to handle it however he saw fit. He said he saw no need in accounting to Livingston because Edwins' and Robertson's expenses had exceeded the recovery.
Cooper, the attorney for the adverse party in Livingston's case, testified that he had discussions with both Edwins and Robertson, but that he discussed settlement primarily with Edwins. He said that an adjuster for his client informed him that Robertson initially held himself out as a lawyer but afterwards confessed that he was a "free lance paralegal operating under the Supreme Court ruling." He said that neither Edwins nor Robertson indicated to him that Robertson was an attorney.

Legal Precepts
This court has the exclusive inherent power to regulate the practice of law and the exclusive original jurisdiction to disbar or discipline members of the legal *299 profession. La. Const. art. V, § 5(B). Consequently, the supreme authority resides in this court to define, by formal rules or by adjudication of cases, the acts or courses of conduct which constitute the practice of law. Saucier v. Hayes Dairy, 373 So.2d 102 (La.1979); LSBA v. Edwins, 329 So.2d 437 (La.1976); Ex Parte Steckler, 179 La. 410, 154 So. 41 (1934); Meunier v. Bernich, 170 So. 567 (Orl.Cir.1936).
DR 3-101, a rule of this court adopted pursuant to its regulatory and disciplinary powers, provides that a lawyer shall not aid a non-lawyer in the unauthorized practice of law. The accompanying Ethical Considerations, excerpted below, offer insights into the purpose and interpretation of this rule. The prohibition against the practice of law by a layman is grounded in the need of the public for integrity and competence of those who undertake to render legal services. EC 3-1. Competent professional judgment is the product of a trained familiarity with law and legal processes, a disciplined, analytical approach to legal problems, and a firm ethical commitment. EC 3-2. A non-lawyer who undertakes to handle legal matters is not governed as to integrity or legal competence by the same rules that govern the conduct of a lawyer. The Disciplinary Rules protect the public in that they prohibit a lawyer from seeking employment by improper overtures, from acting in cases of divided loyalties, and from submitting to the control of others in the exercise of his judgment. EC 3-3. It is neither necessary nor desirable to attempt the formulation of a single, specific definition of what constitutes the practice of law. Functionally, the practice of law relates to the rendition of services for others that call for the professional judgment of a lawyer. The essence of the professional judgment of the lawyer is his educated ability to relate the general body and philosophy of law to a specific legal problem of a client; and thus, the public interest will be better served if only lawyers are permitted to act in matters involving professional judgment. EC 3-5. A lawyer often delegates tasks to clerks, secretaries, and other lay persons. Such delegation is proper if the lawyer maintains a direct relationship with his client, supervises the delegated work, and has complete professional responsibility for the work product. EC 3-6. Since a lawyer should not aid or encourage a layman to practice law, he should not practice law in association with a layman or otherwise share legal fees with a layman. EC 3-8.
Commentators and ABA Opinions in the field have added enlightenment: The condemnation of the unauthorized practice of law is designed to protect the public from legal services by persons unskilled in the law. The prohibition of lay intermediaries is intended to insure the loyalty of the lawyer to the client unimpaired by intervening and possibly conflicting interests. Cheatham, Availability of Legal Services: The Responsibility of the Individual Lawyer and of the Organized Bar, 12 UCLA Rev. 438, 439 (1965). A lawyer can employ lay secretaries, lay investigators, lay detectives, lay researchers, accountants, lay scriveners, nonlawyer draftsmen or nonlawyer researchers. In fact, he may employ nonlawyers to do any task for him except counsel clients about law matters, engage directly in the practice of law, appear in court or appear in formal proceedings as part of the judicial process, so long as it is he who takes the work and vouches for it to the client and becomes responsible to the client. ABA Comm. on Professional Ethics, Op. 316 (1967). A lawyer cannot delegate his professional responsibility to a law student employed in his office. He may avail himself of the assistance of the student in many of the fields of the lawyer's work, "[b]ut the student is not permitted, until he is admitted to the Bar, to perform the professional functions of a lawyer, such as conducting court trials, giving professional advice to clients or drawing legal documents for them. The student in all his work must act as agent for the lawyer employing him, who must supervise his work and be responsible for his good conduct." ABA Comm. on Professional Ethics, Op. 85 (1932).
Our courts have expressed or quoted with approval from several general definitions of the practice of law. For example, *300 the court of appeal in Meunier v. Bernich drew on several sources:
"[T]he practice of law in this country ... embraces the preparation of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients before judges and courts, and, in addition, conveyancing, the preparation of legal instruments of all kinds, and in general, all advice to clients and all action taken for them connected with the law."
170 So. at 571, quoting from Ballentine's Law Dictionary; and from In Re Duncan, 83 S.C. 186, 65 S.E. 210, 211, 24 LRA (N.S.) 750, 18 Ann.Cas. 657 (1909), Boykin v. Hopkins, 174 Ga. 511, 162 S.E. 796, 799 (1932); and People v. Title Guarantee & Trust Co., 180 App.Div. 648, 168 N.Y.S. 278, 280 (1917), to similar effect. See also Duncan v. Gordon, 476 So.2d 896 (La. App.2d Cir.1985); Model Code of Professional Responsibility EC 3-5 (1988).
In defining the practice of law for purposes of interpreting DR 3-101(A), this court may consider as persuasive, but not binding, pertinent legislative expressions. La. R.S. 37:213 provides, under pain of criminal punishment, that it is unlawful for a non-lawyer to practice law, hold himself out as an attorney, or advertise that he alone or jointly has an office for the practice of law. La. R.S. 37:212 defines the practice of law for this purpose as including the appearance as an advocate, the drawing of papers, pleadings or documents, the performance of any act in connection with pending or prospective proceedings before any court of record; as well as the following, if done for consideration: the advising or counseling of another as to secular law, the drawing or procuring of a paper, document or instrument affecting or relating to secular rights in behalf of another, and the doing of any act, in behalf of another, tending to obtain or secure for the other the prevention or redress of a wrong or the enforcement or establishment of a right.
Upon considering whether an attorney has aided a paralegal or other non-lawyer assistant in the unauthorized practice of law, we conclude, in the light of the foregoing persuasive precepts, that a lawyer may delegate various tasks to paralegals, clerks, secretaries and other non-lawyers; that he or she may not, however, delegate to any such person the lawyer's role of appearing in court in behalf of a client or of giving legal advice to a client; that he or she must supervise closely any such person to whom he or she delegates other tasks, including the preparation of a draft of a legal document or the conduct of legal research; and that the lawyer must not under any circumstance delegate to such person the exercise of the lawyer's professional judgment in behalf of the client or even allow it to be influenced by the non-lawyer's assistance. See also ABA/BNA Lawyers' Manual on Professional Conduct 21:8203 (1984); Model Code of Professional Responsibility EC 3-6 (1988).

Application of Precepts
Applying the basic principles defining the unauthorized practice of law, we conclude that the evidence is clear and convincing, and that it is highly probable, see McCormick on Evidence, § 340 (3d ed. 1984), that:
(1) Edwins and Robertson did not testify truthfully with respect to Edwins' hospitalization during the evaluation of Livingston's claim, the rendition of legal advice to file suit, and the preparation and filing of the petition, the motions and the legal memoranda. Edwins' general or irrelevant testimony not only fails to confirm, but casts grave doubt upon, Robertson's testimony that Edwins was in a Memphis hospital at these times. Even if Edwins had been in a hospital because of a serious illness, as Robertson claimed, it is highly unlikely in the absence of any further corroborating evidence, that he performed the legal services attributed to him over the telephone, without having interviewed Livingston, with no investigative file, with no law books, and with only the telephonic assistance of Robertson's daughter, who insofar as the record shows was not a legal *301 secretary. The evidence as a whole strongly suggests an ongoing relationship in which Edwins allowed Robertson to perform legal tasks without supervision and to exercise professional judgment properly reserved only for attorneys, rather than an isolated instance in which an attorney was forced to render emergency legal service from a hospital bed.
(2) For the foregoing reasons, we are convinced that Livingston testified truthfully when he said that Robertson held himself out to be a lawyer, entered an employment and contingent fee contract with him, did not reveal to him that Robertson was not a lawyer until sometime after employment commenced, and did not arrange for Livingston to meet Edwins or receive any advice from him until after the suit had been filed. The record contains independent confirmation that Robertson habitually posed as a lawyer, viz., his sharing an office with a lawyer, partially financed by the lawyer, with the lawyer's sign on the door; his representation to an adjuster that he was a lawyer; his letterhead proclaiming, "Now you can have a lawyer too ... through Prepaid Legal Services, Rob Robertson." Because of the internal consistency and straightforward manner of Livingston's testimony, as well as the foregoing reasons, we believe Livingston's claim that the settlement was presented to him as a fait accompli, that he was given no prior advice regarding the settlement, and that no meaningful explanation of the distribution of his recovery was given him. Indeed, the record plainly indicates that the settlement was effected without his knowing and voluntary consent.
(3) Consequently, the evidence is clear and convincing, and we find it highly probable that, Robertson, and not Edwins, performed the functions and exercised the professional judgment of a lawyer in evaluating Livingston's claim, advising him as to the merits of his case, entering a contract to perform legal services, and preparing a suit, motions, and written legal argument. Further, we are convinced that Edwins improperly delegated the exercise of his professional judgment to Robertson with respect to the rendition of legal counsel to Livingston as to the advisabilitly of settlement. Finally, it is very clear that Edwins wrongfully allowed Robertson to handle and distribute the client's money without close supervision and without any check by the lawyer upon the non-lawyer's judgment in this regard.

2. Whether Respondent Shared Legal Fees With a Non-Lawyer
Both Edwins and Robertson testified that the latter was compensated for the services he performed on an hourly basis and that he did not share in the attorney's fees. The bar association failed to present any evidence to refute their testimony or to show any correlation between attorney fees and Robertson's compensation. Consequently, we find that the respondent has not been shown to have been guilty of sharing his attorney fees with a non-lawyer. See DR 3-102.

3. Whether Respondent Neglected a Legal Matter Entrusted to Him
There is virtually no dispute but that Edwins violated DR 6-101(A)(3) by neglecting a legal matter entrusted to him. Livingston hired Edwins to represent him in a lawsuit filed against him by the People's Bank, in addition to handling the personal injury suit. Edwins failed to file an answer timely, and the bank obtained a default judgment against Livingston and his wife.

4. Whether Respondent Violated the Rules Pertaining to the Handling of Clients' Funds
As our discussion of the facts with regard to Edwins' assistance of a non-lawyer in the unauthorized practice of law shows, Edwins clearly violated DR 9-102 by failing to deposit his client's funds in a separate trust account, by failing to notify the client of the receipt of his funds, by failing to account to the client properly with respect to the distribution of the funds, by failing to maintain complete records of the client's funds, and by failing to pay the client the funds he was entitled to receive. The lawyer's professional fiduciary *302 duty of segregation, notification, delivery and accounting cannot be delegated to a non-lawyer. Accordingly, we are satisfied beyond any doubt that when Edwins attempted to turn over all of his duties under DR 9-102 to Robertson he completely defaulted upon his professional responsibility and violated each and every obligation imposed upon him by the rule.

5. Sanctions
The Disciplinary Rules include ethical standards that are not fundamental to the professional relationship but which define certain standards of conduct. These standards concern duties owed to the profession for the benefit of the public, such as the rule prohibiting the assistance of unauthorized practice. ABA Standards for Imposing Lawyer Sanctions 7.0
Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system. Standards 7.1. Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system. Sanctions 7.2. Reprimand is generally approporiate when a lawyer negligently engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system. Sanctions 7.3.
The respondent attorney in the present case, in our opinion, knowingly assisted the non-lawyer, Robertson, to engage in the unauthorized practice of law. Even if Edwins was unaware that Robertson had held himself out as an attorney, we are convinced that he knowingly allowed Robertson to perform the functions of a lawyer in advising prospective clients as to their claims, entering employment contracts with them, preparing and filing lawsuits, motions and briefs for them, counseling them on the advisability of the settlement of their cases, and receiving, distributing and accounting for their settlement funds. Moreover, in all of these respects Edwins delegated the exercise of his professional judgment to Robertson, adopting the non-lawyer's decisions as his own with little or no supervision by the attorney.
We are convinced further that Edwins assisted Robertson in the unauthorized practice of law with the intent to obtain a benefit for himself and the non-lawyer. Edwins allowed Robertson to hold his paralegal office out to the public as the attorney's branch law office and paid part of the expenses of its operation. Edwins clearly intended to profit and did profit from the attorney fees that were generated by the unauthorized services performed by Robertson. Likewise, the arrangement intentionally benefited Robertson by enabling Edwins to compensate Robertson for his work in connection with cases that Edwins may not have been able to handle without the unauthorized legal assistance of Robertson.
Edwins' assistance of Robertson's unauthorized practice caused serious injury to his clients, namely Livingston and his wife. Edwins settled Livingston's personal injury case for $9,000, and because of his relationship with Robertson he turned the entire proceeds over to the non-lawyer for the performance of the attorney's professional duties and the exercise of the lawyer's professional judgment. Consequently, Livingston received only $1,000 of his $9,000 recovery. Edwins and Robertson attempted to show at the disciplinary hearing that legitimate expenses of some $8,000 were deducted from the settlement funds. We are not convinced, however, that any of these expenses were owed by Livingston. The respondent introduced a "settlement sheet" prepared by Robertson's daughter showing the expenses, but he failed to provide any receipts or other documents verifying that he or Robertson made such expenditures on Livingston's behalf. Moreover, the "settlement sheet" indicates that Livingston was charged a larger fee than he was quoted by Robertson and that he was also charged for items that must be *303 paid for by the attorney as part of his overhead in the absence of a prior agreement by the client in the employment contract or otherwise. For example, Livingston was charged $893.61 for computer-aided legal research in connection with a potential worker's compensation claim. A client who has retained a lawyer on a contingent fee basis may be billed for computer-aided research only when the fee agreement explicitly provides such costs will be billed, the agreement includes a detailed and complete explanation of the nature of the computerized research, and the client consents. ABA/BNA Lawyers' Manual on Professional Conduct, Ethics Opinions 1980-1985, 901:3001 and 901:7517. There was no such agreement or prior client consent in the present case. Furthermore, the computer research expense was incurred in connection with a separate matter, a worker's compensation claim, rather than in relation to Livingston's personal injury case.
Disbarment is generally appropriate when a lawyer knowingly converts a client's property and causes injury or potential injury to a client. Standards 4.1. Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client. Standards 4.12. Reprimand is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client. See LSBA v. Hinrichs, 495 So.2d 943 (La.1986); LSBA v. Alker, 530 So.2d 1138 (La.1988); LSBA v. Thierry, 520 So.2d 410 (La.1988); LSBA v. Krasnoff, 515 So.2d 780 (La.1987); LSBA v. Williams, 512 So.2d 404 (La. 1987); LSBA v. Klein, 511 So.2d 1137 (La. 1987); LSBA v. Pugh, 508 So.2d 1350 (La. 1987).
In the present case, the lawyer did not knowingly convert or misappropriate the client's property to his own use, but he certainly knew or should have known that the client's funds would be commingled with that of the non-lawyer and should have foreseen the danger that they would be misapplied to improper charges and expenses. Edwins' improper dealing with his clients' money by turning it over to a non-lawyer instead of handling it properly through his client's trust account caused actual damage to his clients, the Livingstons.
Finally, by negligently allowing the bank's suit against Livingston to proceed to a default judgment, Edwins forfeited his client's opportunity to resolve the matter in a more favorable manner. Edwins' neglect damaged his clients by causing them to pay additional interest, costs and attorney's fees.
Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client. Standards 4.43. In this case we find that the lawyer acted negligently, and not intentionally, when he allowed the default judgment to be taken against his clients.
In summary, as general propositions, therefore, before applying the aggravating and mititgating circumstances, disbarment is the prima facie appropriate sanction for the respondent's aiding unauthorized practice violation, and suspension is the proper sanction at first view for his failure to preserve his clients' property.
Turning first to the aggravating factors, the considerations or circumstances that may justify and increase the degree of discipline to be imposed, we find the following: (a) Prior disciplinary offenses: Respondent has been disciplined for failing to render an appropriate accounting to his client, failing to maintain complete records of the funds of a client, failing to promptly deliver to the client funds in his possession which the client was entitled to receive, charging his client an excessive fee and commingling his client's funds in LSBA v. R.C. Edwins, 519 So.2d 93 (La.1988); and for soliciting his own employment, failing to render an appropriate accounting to his client for the disbursements of settlement proceeds and for improperly advancing funds to his clients for the purpose of inducing the client to employ him as the attorney in the case in LSBA v. R.C. Edwins, 329 So.2d 437 (La.1976); (b) Dishonest *304 or selfish motive: Livingston's settlement funds were not handled honestly, respondent's misconduct in this case was selfishly motivated toward profiting from Robertson's unauthorized practice; (c) A pattern of misconduct: As evidenced by respondent's prior disciplinary cases he has pursued the same pattern of misconduct for a number of years; (d) Multiple offenses: Although all of respondents violations stem from his unethical relationship with the non-lawyer, he was guilty of at least three offenses; (e) Bad faith obstruction of the disciplinary proceeding: Respondent appears to have cooperated with the investigation; (f) Lack of candor during the disciplinary process: Respondent's tendancies to contradict himself and offer ambiguous responses demonstrates his lack of candor during the investigation; (g) Refusal to acknowledge wrongful conduct: Respondent has adamantly refused to confess to any error or wrongdoing, even to his clear offenses of neglecting to file an answer in his client's case and failing to preserve his client's property; (h) Vulnerability of victims: As an illiterate, the client-victim, Livingston, was highly vulnerable; (j) Indifference to making restitution: Edwins has not offered to make restitution insofar as the record discloses.
Edwins has not introduced any credible evidence which would serve as a mitigating factor.
We conclude that disbarment is appropriate in this case. The absence of mitigating factors, the presence of substantial aggravating circumstances including prior disciplinary suspensions, and the finding of serious violations that presumptively require disbarment and suspension, militate against reducing the degree of sanction below disbarment.

Decree
It is ordered, adjudged and decreed that the name of Rallie C. Edwins, respondent herein, be stricken from the rolls of attorneys and his license to practice law in the State of Louisiana be revoked effective on the date of the finality of this judgment. Respondent will bear all costs of this proceeding.
ATTORNEY DISBARRED.