813 So.2d 325 (2002)
In re Tyrone C. BROWN.
No. 2001-B-2863.
Supreme Court of Louisiana.
March 22, 2002.

ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This case arises from one count of formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Tyrone C. Brown, an attorney licensed to practice law in the State of Louisiana.

UNDERLYING FACTS
Respondent worked as an attorney for the East Baton Rouge Parish Public Defender's Office. While there, respondent met Robert C. Matthews, a convicted felon who was later pardoned, who worked as an investigator for the public defender's office. Although Mr. Matthews was not licensed to practice law, he apparently "represented" various personal injury clients and obtained settlements on their behalf from insurance companies. Mr. Matthews was successful in his activities, and many insurance adjusters mistakenly believed he *326 was an attorney. However, his activities later came under suspicion, and Mr. Matthews became the subject of a fraud investigation by the Louisiana State Police.
In order to continue his activities, Mr. Matthews approached respondent with a scheme whereby Mr. Matthews would act as respondent's paralegal.[1] Respondent agreed to provide Mr. Matthews with blank, pre-signed letters of representation on respondent's letterhead, which purportedly authorized Mr. Matthews to deal with the insurance companies.[2] Additionally, respondent provided Mr. Matthews with pre-signed letterhead stationery which was otherwise blank. Respondent agreed to pay Mr. Matthews an undetermined fee based on the amount of the fee generated by each case.

DISCIPLINARY PROCEEDINGS

Formal Charges
After investigation, the ODC filed one count of formal charges against respondent, alleging his conduct violated Rules 5.3 (failure to properly supervise a nonlawyer assistant), 5.5 (assisting a person who is not a member of the bar in the unauthorized practice of law), 8.4(a) (knowingly assisting another in a violation of the Rules of Professional Conduct), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules of Professional Conduct. Respondent filed an answer denying the allegations of the formal charges. A formal hearing was scheduled, but respondent failed to appear, despite receiving notice of the hearing.

Hearing Committee Recommendation
At the formal hearing, the ODC presented the testimony of Cleve Franklin, an investigator for GEICO Insurance Company. Mr. Franklin testified that his company believed Mr. Matthews was an attorney working with respondent. The ODC also presented the testimony of Trooper Kermit Smith, of the Louisiana State Police Insurance Fraud Division. Trooper Smith testified that in the course of the State Police investigation into the activities of Mr. Matthews, copies of respondent's presigned letterhead stationery were found in the office of Mr. Matthews. Finally, the ODC introduced a copy of respondent's deposition, taken in connection with the investigation of the disciplinary charges. During the deposition, respondent admitted that he exercised no supervision over Mr. Matthews.[3]
At the conclusion of the hearing, the hearing committee found respondent violated the professional rules as charged. The committee recommended respondent *327 be suspended from the practice of law for a period of fourteen months.

Disciplinary Board Recommendation
The disciplinary board found the record supported the conclusion of the hearing committee that respondent violated Rules 5.3, 5.5, 8.4(a) and 8.4(c) of the Rules of Professional Conduct. It noted respondent aided Mr. Matthews in his unauthorized practice of law, and deceived clients into believing Mr. Matthews was an attorney working with him. While the board was unable to determine from the record whether any clients suffered actual injury, it found the potential for injury from respondent's actions was significant.
As aggravating factors, the board found respondent had a dishonest or selfish motive, refused to acknowledge the wrongful nature of his conduct, and had substantial experience in the practice of law, having been admitted to the bar in 1989. The board recognized respondent's lack of a prior disciplinary record as a mitigating factor.
In fashioning a sanction, the board observed that there was little jurisprudence involving violations of Rules 5.3 and 5.5. It cited In re: Tosh, 99-1972 (La.9/3/99), 743 So.2d 197, in which the respondent was disbarred for numerous professional violations including failure to supervise a nonlawyer employee. While the board did not find that respondent's conduct in the instant case was as egregious as in Tosh, it concluded a longer sanction than that recommended by the hearing committee was justified. Accordingly, the board recommended respondent be suspended for a period of two years. One member dissented, indicating disbarment should be imposed.
Neither respondent nor the ODC filed an objection in this court to the disciplinary board's recommendation; however, pursuant to Supreme Court Rule XIX, § 11(G)(1)(a), this court ordered the parties to submit written briefs within twenty days, addressing the appropriateness of the proposed sanction. The court's order particularly directed the parties to address the applicability of Louisiana State Bar Ass'n v. Edwins, 540 So.2d 294 (La.1989). The ODC filed a brief, arguing in favor of disbarment; respondent filed no brief.

DISCUSSION
The record supports the hearing committee's factual determination that respondent violated Rules 5.3, 5.5, 8.4(a) and 8.4(c) of the Rules of Professional Conduct. In particular, the undisputed evidence establishes that respondent aided Mr. Matthews in his unauthorized practice of law and that he failed to make any effort to supervise Mr. Matthews.
In Louisiana State Bar Ass'n v. Edwins, 540 So.2d 294, 299 (La.1989), we interpreted Disciplinary Rule 3-101(A), the predecessor to Rules 5.3 and 5.5, and explained the dangers inherent in the delegation of a lawyer's professional responsibility to non-lawyer assistants:
The condemnation of the unauthorized practice of law is designed to protect the public from legal services by persons unskilled in the law. The prohibition of lay intermediaries is intended to insure the loyalty of the lawyer to the client unimpaired by intervening and possibly conflicting interests. Cheatham, Availability of Legal Services: The Responsibility of the Individual Lawyer and of the Organized Bar, 12 UCLA Rev. 438, 439 (1965). A lawyer can employ lay secretaries, lay investigators, lay detectives, lay researchers, accountants, lay scriveners, nonlawyer draftsmen or nonlawyer researchers. In fact, he may employ nonlawyers to do any task for him except counsel clients about law *328 matters, engage directly in the practice of law, appear in court or appear in formal proceedings as part of the judicial process, so long as it is he who takes the work and vouches for it to the client and becomes responsible to the client. ABA Comm. on Professional Ethics, Op. 316 (1967).
The facts of Edwins are somewhat similar to the instant case. Rallie Edwins, a Baton Rouge attorney, entered into an arrangement with a paralegal, Rob Robertson, to use Mr. Robertson's paralegal's office in New Iberia as Mr. Edwin's branch law office. Mr. Robertson apparently met with a personal injury client, William Livingston, and led Mr. Livingston to believe he was an attorney. Mr. Robertson entered into an attorney-client contract with Mr. Livingston, but later advised Mr. Livingston that he would be represented by Mr. Edwins. Subsequently, Mr. Edwins was hospitalized, and he authorized Mr. Robertson to sign his name to various pleadings. Mr. Edwins admitted that he never saw Mr. Livingston's file. Subsequently, Mr. Livingston's personal injury case was settled for $9,000. Of this amount, Mr. Edwins turned over $8,000 to Mr. Robertson. This court concluded that Mr. Edwins assisted Mr. Robertson in the unauthorized practice of law:
The respondent attorney in the present case, in our opinion, knowingly assisted the non-lawyer, Robertson, to engage in the unauthorized practice of law. Even if Edwins was unaware that Robertson had held himself out as an attorney, we are convinced that he knowingly allowed Robertson to perform the functions of a lawyer in advising prospective clients as to their claims, entering employment contracts with them, preparing and filing lawsuits, motions and briefs for them, counseling them on the advisability of the settlement of their cases, and receiving, distributing and accounting for their settlement funds. Moreover, in all of these respects Edwins delegated the exercise of his professional judgment to Robertson, adopting the non-lawyer's decisions as his own with little or no supervision by the attorney.
We are convinced further that Edwins assisted Robertson in the unauthorized practice of law with the intent to obtain a benefit for himself and the non-lawyer. Edwins allowed Robertson to hold his paralegal office out to the public as the attorney's branch law office and paid part of the expenses of its operation. Edwins clearly intended to profit and did profit from the attorney fees that were generated by the unauthorized services performed by Robertson. Likewise, the arrangement intentionally benefitted Robertson by enabling Edwins to compensate Robertson for his work in connection with cases that Edwins may not have been able to handle without the unauthorized legal assistance of Robertson.
Id. at 302.
As in Edwins, respondent in the instant case knowingly allowed Mr. Matthews to perform the functions of an attorney by giving him access to blank, pre-signed stationery from respondent's law firm. Respondent completely delegated the exercise of his professional judgment to Mr. Matthews, and, by his own admission, exercised no supervision over Mr. Matthews. In Edwins, the court concluded that disbarment is "the prima facie appropriate sanction for the respondent's aiding unauthorized practice violation...." Id. at 303.
In determining an appropriate sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana *329 State Bar Ass'n v. Reis, 513 So.2d 1173, 1177-1178 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520, 524 (La.1984).
Considering the total abdication of respondent's duties to a non-lawyer assistant, we find the baseline sanction for respondent's misconduct is disbarment. Three aggravating factors are present: dishonest or selfish motive, refusal to acknowledge the wrongful nature of the conduct, and substantial experience in the practice of law (admitted in 1989). As a mitigating factor, respondent has no prior disciplinary record. The presence of this single mitigating factor does not justify a downward deviation from the baseline sanction. Accordingly, we will disbar respondent from the practice of law.

DECREE
Upon review of the findings and recommendation of the hearing committee and the disciplinary board, and considering the record and briefs filed herein, it is ordered that the name of Tyrone C. Brown be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.
NOTES
[1] It is noteworthy that by this time, respondent had left the public defender's office and was employed by the Attorney General's Office, where he was prohibited from having a private practice.
[2] The letter, on respondent's letterhead, stated:

Dear ________
This letter is intended to inform your company that I represent ________ in regard to the above-captioned personal injury loss. Either myself or Mr. Robert Matthews, who works with me, will be contacting you regarding this claim.
All documentation of my client's injuries will be provided when received.
If you have any problem or questions with the foregoing please contact me by phone or mail.
[3] During the deposition, the following exchange took place:

Q. What mechanism did you set up to supervise Mr. Matthews?
A I didn't really feel the need. I trusted him. And in terms of the cases we received, and those eight cases, I felt that if I could relay to him what he could and could not do, that he wouldn't betray that.